```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )    Chapter 13
PATRICIA JO KRUSE,              )
                                )    Bankruptcy No. 08-02383
     Debtor.                    )
```

### ORDER RE: CONFIRMATION OF PLAN

This matter came before the undersigned on April 28, 2009 for hearing on confirmation of Debtor's Chapter 13 plan.  Debtor Patricia Kruse appeared with attorney Rush Shortley.  Carol Dunbar appeared as Chapter 13 Trustee.  After the presentation of evidence and argument, the Court took the matter under advisement.  The time for filing briefs has now passed and this matter is ready for resolution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### STATEMENT OF THE CASE

Trustee objects to confirmation of Debtor's Chapter 13 Plan. She argues Debtor improperly includes 2008 tax refunds in her monthly income on Schedule I.  She asserts Debtor should turn over 2008 tax refunds to Trustee as requested.  Trustee also objects that Debtor's student loan claim should be paid through the plan and should be prorated with all unsecured claims. Debtor's plan classifies the student loan claim separately from other unsecured claims and provides for direct payment of $250 per month to the student loan creditor.

### FINDINGS OF FACT

Debtor filed her Chapter 13 petition on October 29, 2008. At the hearing, Debtor testified that she is committed to saving her home in order to provide a home for her two-year-old daughter. She purchased her two-bedroom home in February 2006 for $107,500.  The house was scheduled for a foreclosure sale prepetition.  Debtor has already replaced the roof on the house. Debtor's testimony and Exhibit 1 detail further proposed repairs to the home for replacement of the front door, kitchen window, two bedroom windows, screen door to patio, and garage door, with a total cost of $2,233.74.  Debtor testified that she knew these repairs would be necessary when she bought her house.

Debtor's other current expenses include prescription eyeglasses with an estimated cost of $692.54, and expenses

related to vehicle damage to Debtor's car of $748.07 and a separate accident with another car of $435.00. Debtor testified that she has poor eyesight which causes headaches, her prescription changes often, and she generally needs new glasses every year. She also testified about the circumstances causing the vehicle damage. Rather than make a claim against her insurance, Debtor plans to pay for the vehicle damage herself. This will avoid increases in insurance premiums. Also, the damage for each incident is not much more than the $500 insurance deductible amount. The Summary included in Debtor's Exhibit 1 shows a total of $4,109.34 for the glasses, vehicle repairs and home repairs.

Debtor testified that she received a 2008 Federal tax refund of $3,070 and owed Iowa income taxes of $163. After deducting the state taxes owed and the cost of electronic filing of her tax returns, Debtor received a net tax refund of $2,812 which she is holding in her bank account. She wishes to retain this amount to pay for her glasses, vehicle repairs and home repairs. In her amendment to Schedule I, Debtor includes as monthly income "2008 Income Tax Refund (Net)" of $234.35. Over twelve months, this totals $2,812.

Debtor testified that she changed her W-4 forms in the past two years in order to reduce her payroll withholdings and limit the amount of tax refunds she receives. She again changed her W-4 form on March 24, 2009 to decrease withholdings this year. These changes are set out in Exhibit 2. Debtor's federal withholding decreased from $472.58 in her March paycheck to $254.36 in her April paycheck, which allowed her net pay to increase by $205.99 per month. In addition, Debtor paid off a car loan in March which frees up $155 per month which Debtor is dedicating to plan payments.

Exhibit 4 shows that the total amount of Debtor's student loan debt with the U.S. Department of Education (the "DOE") is $49,801.04. The DOE's Claim #7 states the total debt is $57,036.37. The annual interest rate on the debt is 8.125%. Debtor has an agreement with the DOE to make monthly payments of $250 for a year, after which she will need permission to continue paying at that reduced rate. The actual monthly payment due under the DOE's income contingent plan is $534.40. Paying "interest only" would require monthly payments of approximately $335. Debtor originally borrowed approximately $30,000 in student loans, but the balance has increased from accrual of interest, which is capitalized annually, during periods of deferral or forbearance. Debtor's plan, in Class 4, treats student loan claims separately from other unsecured claims and

proposes to maintain payments to the DOE under the original contract between the parties, citing § 1322(b)(5).

Unsecured claims filed total $68,983.90, including the $57,036.37 student loan debt. Trustee calculates the DOE will receive 26.30% of its claim and the remaining unsecured creditors will be paid 5.02% of their claims under Debtor's Plan. If the DOE is paid pro rata with other unsecured creditors through the plan, all unsecured creditors would receive 20.64% of their claims. Trustee objects to direct payment and separate classification of the student loan debt. No creditors have objected to the plan.

## CONCLUSIONS OF LAW

A bankruptcy court may confirm a Chapter 13 debtor's plan if the requirements of 11 U.S.C. § 1325(a) are satisfied. If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, however, the bankruptcy court may approve the plan only if (A) the plan provides for payment of 100% of claims, or (B) "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1). "Projected disposable income" requires a reality-based determination of how much a debtor can afford to pay. In re Frederickson, 545 F.3d 652, 660 (8th Cir. 2008), cert. denied ___ S. Ct. ___ (2009). "[A] debtor's 'disposable income' calculation on Form 22C is a starting point for determining the debtor's 'projected disposable income,' but [] the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J." Id. at 659.

## TAX REFUNDS

Most courts have determined that tax refunds should be included in the § 1325(b)(1) "projected disposable income" calculation. In In re Midkiff, 342 F.3d 1194, 1202 n.4 (10th Cir. 2003), the court stated that the plain meaning of "projected disposable income" includes tax refunds which constitute income at the disposal of the taxpayer. The Eighth Circuit Court of Appeals determined that the Chapter 12 disposable income provision requires a plan to promise to pay the disposable income that is received, not merely what is predicted to be received. Rowley v. Yarnall, 22 F.3d 190, 193 (8th Cir. 1994). This Court

3

applied Rowley in a Chapter 13 disposable income calculation in In re Turpen, 218 B.R. 908, 916 (Bankr. N.D. Iowa 1998). Thus, actual income tax refunds received during the term of a Chapter 13 plan are "projected disposable income" in this district. See also In re Michaud, 399 B.R. 365, 372 (Bankr. D.N.H. 2008) (concluding tax refunds constitute income under § 1325(b) and must be devoted to the plan).

This Court set out certain factors to consider in determining whether a Debtor should be permitted to retain disposable income, such as a tax refund, to pay current expenses in In re Wistey, No. 08-00555M, slip op. at 2 (Bankr. N.D. Iowa June 25, 2008) (considering debtors' retention of economic stimulus rebate funds). These factors include (1) whether the expenses are necessary and the amounts reasonable; (2) whether the expenses fall within the expense categories in Schedule J; (3) whether the particular expense was foreseeable within the category; and (4) whether there is sufficient money within the category to pay the expense. Id. In addition, a court may consider

> the amount of the debtor's tax refund, the amount of the refund in comparison to the total tax due, the debtor's yearly income and expenses, the debtor's overall budget, the number and nature of the debtor's dependents, the amount being paid into the debtor's plan, the dividend being paid to unsecured creditors, and the length of the debtor's plan.

Michaud, 339 B.R. at 372.

In their briefs, both Debtor and Trustee discuss the possibility that a portion of Debtor's tax refund is exempt. Trustee concedes that Debtor could exempt $825.10 of the tax refunds and Debtor asserts she could claim $1,000 exempt. Debtor has not amended her schedules to claim any of the tax refunds exempt. Since no exemptions are claimed, the debate is hypothetical and the Court need not address potential resolutions.

Debtor received net tax refunds of $2,812, or approximately 30% of her total 2008 Federal and Iowa tax withholdings. She reduced the amount of her tax refunds both pre- and post-petition by changing her W-4s. If Debtor paid the tax refunds into the Plan, the total amount available for unsecured creditors, including the student loan creditor, would increase by 20%.

4

Because Debtor has above-median income, her plan length is 60 months.  Schedule J lists modest amounts for most expense categories, except for home mortgage payments of $1,027 per month.  Schedule D discloses two mortgages totaling more than $111,000 on Debtor's home which she values at $107,000.  Debtor's Plan contemplates curing mortgage arrearages of $20,513.78, requiring 60 payments of approximately $342.  Adding this amount and high home maintenance costs to the existing mortgage payments results in housing costs much higher than the IRS standard for Johnson County of $988 per month for a family of two.

Some courts have found a lack of good faith under § 1325(a)(3) based on a debtor's proposed retention of an unaffordable house to the detriment of unsecured creditors.  See, e.g., In re Nissly, 266 B.R. 717, 720-21 (Bankr. N.D. Iowa 2001) (denying confirmation where debtors' payment for mortgage and taxes was excessive in light of the small amount of equity in the home, among other factors); In re Crink, 402 B.R. 159, 170 (Bankr. M.D.N.C. 2009) (finding housing expense excessive where mortgage payments, utilities and home maintenance constituted 61% of debtors' net monthly income); In re Namie, 395 B.R. 594, 597 (Bankr. D.S.C. 2008) (finding lack of good faith where vast majority of debtor's income was utilized to retain an expensive home).  Courts look at the size of the family, their reasonable needs, the cost of alternative housing and the length of time the debtor has owned the home, among other factors, when determining whether housing expenses are excessive.  Crink 402 B.R. at 171.  The amount of Debtor's projected income which is proposed to be applied to indebtedness on this house is troublesome.  However, no objection has been made on this issue and, therefore, the Court will not further consider it at this time.

Debtor's need for prescription eyeglasses could be categorized as a medical expense, for which Debtor budgets $10 per month on Schedule J, or $120 per year.  This is much less than the $692.54 Debtor has documented for glasses.  Expenses for replacing windows and doors could be categorized as home maintenance, for which Debtor budgets $75 per month on Schedule J, or $900 per year.  This is also much less than the $2,233.74 Debtor has documented for replacing doors and windows.  The $1,291.07 expense for vehicle repair from two unrelated incidents of vehicle damage is not as easily categorized.

Based on the foregoing, the Court concludes that the $2,812 tax refund is disposable income.  Debtor may retain a total of $1,875 from her tax refund to pay for her prescription eyeglasses and vehicle repairs.  These amounts are reasonable and payment of these expenses is necessary.  Debtor must turn over to Trustee

the remainder of the tax refund, or $937.  Debtor is also directed to amend Schedule J to more accurately reflect reality, including foreseeable home maintenance and medical expenses over the life of her Chapter 13 plan and changes in monthly mortgage and car payments.  In addition, Schedule I should be amended to reflect Debtor's current and foreseeable income, including changes in her payroll withholdings and child support.

### STUDENT LOAN PAYMENT

Trustee asserts that Debtor's student loan debt should be paid through the plan and should be prorated with all unsecured claims.  In In re Ireland, No. 96-40218XM, at 1 (Bankr. N.D. Iowa May 10, 1996), Judge Edmonds agreed with "the proposition that the court should not confirm a plan which treats student loans more favorably than other secured creditors merely because they are nondischargeable debts."  He held that the plan unfairly discriminated against general unsecured creditors and should not be confirmed.  Id.; 11 U.S.C. § 1322(b)(1) (debtors may not discriminate unfairly against a designated class of unsecured claims).  In In re Groves, 39 F.3d 212, 216 (8th Cir. 1994), the court similarly held that "the nondischargeability of student loan claims, by itself, does not justify substantial discrimination against other, dischargeable unsecured claims in a Chapter 13 plan."

A four part-test set out in In re Leser, 939 F.2d 669, 672 (8th Cir. 1991), determines whether separate classification of unsecured claims is fair by inquiring:

> (1) whether the discrimination has a reasonable basis;
> (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

The debtor has the burden of proving that the proposed classification does not discriminate unfairly.  Groves, 39 F.3d at 214.

Debtor cites § 1322(b)(5) as authority for continuing to pay her student loan under the parties' contract.  That section provides that a debtor may, in a Chapter 13 plan,

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim

6

>     on which the last payment is due after the date on
>     which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5).

This "cure and maintain" treatment of long-term student loans has been considered by several courts.  The majority position holds that plans providing full payment of student loan obligations under § 1322(b)(5) must also undergo unfair discrimination analysis because nondischargeability, by itself, is insufficient reason to permit discrimination against other unsecured claims.  In re Webb, 370 B.R. 418, 423 (Bankr. N.D. Ga. 2007) (applying the four-part Leser test).  The court in Webb concludes that "a balance must be found between the interest of the creditors in receiving equal treatment and the debtor's interest in receiving a fresh start."  370 B.R. at 425 (allowing the plan to be confirmed and limiting the conclusion to the specific facts of the case); see also In re Machado, 378 B.R. 14, 17 (Bankr. D. Mass. 2007) (concluding that "in the circumstances of this case, the proposed discrimination as against non-student loan claims is fair").

Debtor classifies her student loan debt separately from other unsecured debt.  It is excepted from discharge under § 523(a)(8).  Debtor also points out that a significant amount of interest will accrue at 8.125% during the life of the plan if she is not able to continuing paying on it at a higher rate than other unsecured claims.  The Court notes that Debtor's plan to pay $250 per month on the student loan is insufficient to cover monthly interest accruing at approximately $335 per month.  Under Trustee's calculations, if the student loan is paid with other unsecured creditors, all unsecured creditors would receive approximately 20% of their claims.  In comparison, under Debtor's current plan, the DOE would receive 26.30% of its claim and other unsecured creditors would receive only 5%.

The Court concludes that Debtor can carry out a plan without separately classifying the student loan debt.  Separate classification would certainly benefit Debtor.  However, it is accomplished at substantial cost to other unsecured creditors.  Including the student loan debt with other unsecured debt would greatly increase the dividend to other creditors.  Debtor's proposed payment of $250 on the student loan debt is insufficient to stop the accrual of interest.  The DOE would receive approximately 6.30% less if it was not separately classified.  Prorated payments to the DOE will reduce interest accrual in comparison with Debtor's prepetition deferrals and forbearances, although not as much as Debtor wishes.  The benefit to other

7

unsecured creditors of receiving an additional 15% of their claims over the life of the plan outweighs Debtor's wish to reduce the accrual of interest on her nondischargeable student loans.  In summary, the Court concludes that the separate classification of student loan debt in Debtor's proposed plan is unfair discrimination.  As such, Debtor's Chapter 13 plan cannot be confirmed.

**WHEREFORE**, confirmation of Debtor's Chapter 13 Plan is DENIED.

**FURTHER**, Debtor may not separately classify student loan debt.

**FURTHER**, Debtor is entitled to retain $1,875 of her 2008 tax refund.  The remaining $937 must be turned over to Trustee as disposable income.

**FURTHER**, the deadline to file a Modified Plan, and to amend Schedules I and J to more accurately reflect current and foreseeable income and expenses as directed herein, is June 30, 2009.

DATED AND ENTERED: June 11, 2009

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE